IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**VIRGINIA CORDOBA, on behalf of,**
**JOHN F. CORDOVA,**

     **Plaintiff,**

v.                                                                                       No. 97cv1627 M/JHG

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

     This matter comes before the Court upon Plaintiff's (Cordova's) Motion to Reverse or Remand Administrative Decision, filed September 21, 1998. Cordova brings this action on behalf of her son, John F. Cordova (John). The Commissioner denied Cordova's application for supplemental security income. Cordova alleges John, born May 24, 1984, has been disabled since September 19, 1990, due to a specific language learning disability and an attention deficit hyperactivity disorder.

     The Commissioner denied Cordova's application both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge (ALJ) found John was not a disabled child within the meaning of the Social Security Act. The Appeals Council denied Cordova's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Cordova seeks review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for that of the ALJ *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).

Cordova contends the ALJ's findings regarding the issue of whether John's impairments were functionally equivalent to a listed impairment are not supported by substantial evidence; the ALJ's finding that John does not suffer from a severe mental impairment is not supported by substantial evidence; the ALJ erred by "downplaying" her reports; and the ALJ erred by failing to consider the impact of John's structured environments at both school and home.

The law in effect at the time the ALJ issued his decision required the decision maker to apply a four step analysis. *See* 42 U.S.C. § 1382c(a)(3)(A) (1995), as implemented by 20 C.F.R. § 416.924(b)(1995). Accordingly, in this case, the ALJ first inquired whether John engaged in substantial gainful activity. 20 C.F.R. § 416.924(c). The ALJ determined he had not, so the analysis proceeded to the second step. At the second step, the ALJ asked whether he suffered from a severe impairment. 20 C.F.R. § 416.924(d). Since the ALJ found he suffered from the severe impairments of specific language learning disability and an attention deficit hyperactivity disorder, inquiry proceeded to the third step. At the third step, the ALJ inquired whether the impairments were medically or functionally equivalent to a listed impairment. 20 C.F.R. § 416.924(e). At the third step, the ALJ determined John's impairments did not meet or equal a listing.

2

The analysis then proceeded to the fourth and final step. At the fourth step, the ALJ performed an individualized functional assessment to determine whether John had an impairment or combination of impairments of comparable severity to that which would prevent an adult from engaging in substantial gainful activity. 20 C.F.R. § 416.924(f). The ALJ determined John's impairments would not be of comparable severity to an impairment which would disable an adult. Thus, he concluded he was not a disabled child within the meaning of the Social Security Act.

After the ALJ issued his decision, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act, Pub.L. No. 104-193, 110 Stat. 2105. The Act amended the applicable standard for evaluating children's disability claims, 42 U.S.C. § 1382c(a)(3)(C), to read as follows:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which has lasted or can be expected to last for a continuous period of not less than 12 months.

In effect, the amended Act eliminates the fourth step of the analysis. The implementing regulations reflect this change by providing that if the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). The new version of the Act applies to all cases which have not been finally adjudicated as of the effective date of August 22, 1996. *Brown v. Callahan*, 120 F.3d 1133, 1135 (10th Cir. 1997). The instant case was not finally adjudicated as of that date. Therefore, the new law applies to this case. In reviewing the Commissioner's decision, it is therefore necessary only to review the first three steps of the analysis. *Id.*

The record reveals that John suffered from a learning disability and attention deficit disorder. John was in special education programs since the first grade. AR. 91; 114. He was qualified as a D

level student due to attention deficit disorder and a learning disability in the area of language. AR. 186.

On June 25, 1990, Ms. Wintheiser, a speech pathologist, found John suffered from an articulation deficit accompanied by a mild language disability. AR 192. She found his articulation lacked precision and his vocabulary skills were one year below his chronological age level. *Id.* Ms. Wintheiser also observed significant information processing delays. *Id.*

On October 13, 1993, Dr. Zieman diagnosed John as suffering from attention deficit hyperactivity disorder with moderate level of symptoms. AR 117. Dr. Zieman noted Cordova seemed to have a somewhat distorted perception of John's symptoms. *Id.* Dr. Zieman recommended stimulant medication and better management methods for Cordova. *Id.* John was prescribed Ritalin which initially helped him achieve better attention and behavioral control. AR 186.

On November 10, 1993, John's teacher noted he had the ability to get along with others, but he has problems because he gets frustrated easily and is unable to control his temper. AR 102. She also noted that while his behavior was poor, he was doing well when he improved with medication. *Id.* She observed John could not stay on task for longer than a minute without getting out of his seat or getting involved in someone else's conversation. AR 103. John's teacher also reported an apparent belief by Cordova that John was able to do less than he really could academically. AR 111. In October, 1994, John was progressing but was two years below his grade level. AR 141.

On April 11, 1995, John's counselor, Ms. Morris, noted that while John was saddened and frustrated addressing behavioral issues related to school, his mood seemed to be within normal limits. AR 185. Ms. Morris wrote that while Ritalin helped John, his mother reported its effects wore off by the middle of the day. AR 186. John had recently experienced a significant loss of self-esteem

following an argument with a peer and wrote a note in which he threatened to kill himself. AR. 187. Ms. Morris found the area of greatest tension seemed to be John's less than optimal adaptation at school. AR 188. Ms. Morris diagnosed attention deficit hyperactivity disorder with specific learning disabilities. *Id.* On May 22, 1995, Ms. Morris wrote that John's symptoms remained consistent with a child with attention deficit hyperactivity disorder complicated by learning disabilities. AR 200.

On June 7, 1995, Dr. Sehr noted John was sad most of the time. AR 198. Dr. Sehr observed John's mood was depressed, his affect was restricted, and he sat very quietly, huddled in the corner. *Id.* Dr. Sehr diagnosed depression, possibly secondary to the use of stimulants. *Id.* Dr. Sehr switched John from Ritalin to Dexedrine. *Id.* On June 19, 1995, Cordova reported John's emotional stability and concentration had improved. AR 197. On October 3, 1995, Dr. Rudnick increased John's Dexedrine dosage and considered whether to prescribe Clonidine. AR 195. Cordova told Dr. Rudnick John was having significant difficulties in school. *Id.*

At the hearing of May 17, 1995, Cordova testified John was four years behind his classmates and his teacher would at times refuse to teach him due to his behavior and academic problems. AR 205-206. John was in special education classes except for his math class. AR 206. He did not know how to read. *Id.* John attended speech therapy two or three times a week at school. *Id.* Cordova noticed that John seemed to lose weight and sleep due to his medication AR 208.

Cordova testified John was not limited physically in any manner but he tended to be reckless. AR 209. John was able to communicate adequately with his family, but other people tended to have a difficult time understanding him. AR 209-210. He was able to understand instructions if they were repeated. AR 210. He had some friends but would often end up fighting with them. *Id.* He was easily distracted, did not know how to read, and watched TV for only ten minutes at a time. *Id.* Cordova

also testified John threatened to kill himself every time he was upset. AR 211. On Social Security form, Cordova stated that even though he was taking medication, John's behavior was becoming worse. AR. 105.

Cordova contends substantial evidence does not support the ALJ's determination that John's impairments were not functionally equivalent to Listing 112.02. Functional equivalence requires an extreme limitation in one area of functioning, or a marked limitation in two areas of functioning. 20 C.F.R. § 416.926a(c). An extreme limitation means no meaningful functioning in a given area, and a marked limitation is one which seriously interferes with the child's functioning. 20 C.F.R. § 416.926a(c)(3). Cordova argues John is functionally equivalent to Listing 112.02 because he has an impairment of cognitive function and he can be considered to have a marked limitation in the area of concentration, persistence and pace.

Listing 112.02 addresses organic mental disorders. 20 C.F.R. Subpt. P, App. 1. The requirements of subsection A and B both must be satisfied. *Id.* Subsection (A) requires medically documented persistence of at least one of ten criteria. Cordova contends John satisfied subsection (A)(9) which requires impairments of cognitive function, as measured by clinically timely standardized psychological testing. The ALJ found John had a less than moderate limitation of his cognitive functioning. The record does not establish an impairment of cognitive function at the level required by subsection (A)(9). The ALJ's determination is supported by substantial evidence.

Cordova also argues John satisfied the criteria of subsection (B)(2)(d) of Listing 112.02, which requires a deficiency in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner. The ALJ found John has a less than moderate restriction in the area of concentration, persistence and pace. Substantial evidence supports this determination under

6

the functional equivalence standard.

Cordova contends the ALJ's finding that John did not have a severe mental impairment is not supported by substantial evidence. At step two of his analysis, the ALJ found John suffered from the severe mental impairments of a specific language learning disability and an attention deficit hyperactivity disorder. These findings are supported by substantial evidence. Thus, Cordova's argument is without merit.

Cordova claims the ALJ "attempts to downplay" Cordova's reports were not legally supportable. The ALJ's decision establishes the ALJ considered Cordova's statements and testimony regarding John's condition. This court is not free to reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d at 1395. Moreover, this court may not reverse the ALJ merely because there is also evidence which supports the claimant. *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992). The ALJ applied correct legal standards and substantial evidence supports his decision.

Finally, Cordova argues the ALJ failed to consider John's structured environments at school and at home. The decision demonstrates the ALJ recognized John was in special education classes and the ALJ carefully analyzed John's school records, reports from teachers and counselors, statements and testimony from Cordova, as well as the medical record. Hence, the ALJ clearly considered the nature of John's environments at home and at school. Therefore, this argument is without merit.

**RECOMMENDED DISPOSITION**

The ALJ applied correct legal standards and substantial evidence supports the decision. The

motion to reverse or remand for a rehearing should be denied and this case should be dismissed.

_____
JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Within ten days after a party is served with a copy of these amended proposed findings and recommended disposition that party may, pursuant to **28 U.S.C. § 636 (b)(1)**, file written objections to such amended proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the amended proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.